COMMUNITY HIGH SCHOOL DISTRICT 155 *et al.*, Plaintiffs-Appellants, *v.* INGRID DENZ, a Minor, by her Next Friend, ANTHONY J. VERONICO, Guardianship Administrator of the Illinois Department of Children and Family Services, *et al.*, Defendants-Appellees.

Second District   No. 83—1096

Opinion filed May 9, 1984.

Stanley B. Eisenhammer and Bennet Rodick, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., and Wayne Plaza, of Rooks, Pitts, Fullagar & Poust, both of Chicago, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Katherine Spalding and Paul Millichap, Assistant Attorneys General, of counsel), for appellees Department of Children and Family Services and Donald G. Gill.

Kevin M. Kane, of Prairie State Legal Services, of Waukegan, for appellee Ingrid Denz.

JUSTICE HOPF delivered the opinion of the court:

This appeal essentially involves the question of what is the appropriate educational placement of defendant Ingrid Denz (Ingrid), a trainable mentally handicapped child with Down's syndrome who is also a carrier of infectious Hepatitis Type B. Plaintiffs, Community High School District 155 (District 155) and the Board of Control of Special Education District of McHenry County (SEDOM), contend that because of the risk that Ingrid might transmit the disease to others if she is placed in a classroom setting, the appropriate placement is "homebound" placement, whereby Ingrid would receive her special education through a one-to-one tutor at her home. Defendants, on the other hand, maintain that the risk of transmission of the disease is remote and therefore is not a sufficient reason to exclude Ingrid from classroom participation. Defendants therefore argue that the class-

room setting is the least restrictive environment in which to educate Ingrid and, as such, is required to be provided by plaintiffs under section 14—8.02(c) of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 14—8.02(c)), as well as the parallel Federal statute, the Education for All Handicapped Children Act (EAHCA) (20 U.S.C. sec. 1401 *et seq.* (1982)).

The factual basis for this appeal is as follows. In March 1977, Ingrid Denz was hospitalized and diagnosed as having chronic persistent infectious Hepatitis Type B. Since that time, she has repeatedly tested positive for being a carrier of that disease. Ingrid has also repeatedly tested positive for an "e antigen," indicating a degree of infectivity many times higher than other carriers of Hepatitis Type B virus. She is, however, totally asymptomatic. In April 1977, the Illinois Department of Children and Family Services (IDCFS) became Ingrid's guardian and in September 1977 placed Ingrid with the Mauer family. At that time, Ingrid was of elementary school age and therefore the responsibility for her education was with the Crystal Lake Elementary School District 47 (District 47).

Meanwhile, in August 1977, District 47 performed a case study evaluation pursuant to section 14—8.02(b) of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 14—8.02(b)) to determine Ingrid's need for special education. Subsequently, two multidisciplinary conferences were held by the plaintiffs in which it was determined that although Ingrid was educationally capable of attending a program operated by SEDOM at the "SEDOM Center" facility, her medical condition made her ineligible for that program. As a result of these conferences, Ingrid was placed in the "homebound" program in February 1978 where she received essentially the same education and services as was provided at the "SEDOM Center."

Approximately two years later, the IDCFS requested that District 47 change Ingrid's placement to allow her to interact with other handicapped children. The request was denied and the IDCFS appealed the decision to an independent hearing officer pursuant to section 14—8.02(g) of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 14—8.02(g)). After hearing the evidence and arguments, the hearing officer found that the dangers posed by the health impairment for Ingrid and other children could be sufficiently minimized by appropriate, relatively inexpensive prophylactic procedures and that Ingrid had an overriding right to an educational placement which affords her some degree of interaction with other children. Thus, the decision of the multidisciplinary conference was reversed and Ingrid's placement in the SEDOM facility was ordered. The hearing officer also ordered

that Ingrid be provided a teacher's aide to guard against infection of other children. District 47 appealed the order to the State Superintendent of Education pursuant to section 10.16 of the Board of Education's Rules and Regulations to Govern the Administration and Operation of Special Education. The substance of these rules is not contained in the record on appeal. After hearing additional medical evidence and testimony, which will be discussed in further detail later in this opinion, the State Superintendent of Education affirmed the order of the independent hearing officer.

District 47 then appealed the decision of the State Superintendent of Education to the circuit court of McHenry County pursuant to section 14—8.02(k) of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 14—8.02(k)). District 155 subsequently intervened as a party-plaintiff when it became legally responsible for Ingrid's education. After hearing the evidence and arguments of counsel and reviewing the record below, the trial court affirmed the decision of the State Superintendent of Education. Plaintiff's motion for a stay of the judgment pending appeal was denied.

Plaintiffs appeal from the judgment of the circuit court, raising the following issues for review: (1) whether the trial court and the State Superintendent of Education exceeded the scope of judicial review authorized under section 14—8.02 of the School Code by substituting their judgment for that of the local school district; (2) whether Ingrid's homebound placement is mandated by the school district's health and safety obligations to its students so that she is being educated in the least restrictive environment, as required by section 14—8.02(c) of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 14—8.02(c)) and the EAHCA; (3) whether the State Superintendent had jurisdiction to hear this matter; and, (4) whether the plaintiffs were denied due process by the State Superintendent?

Relying upon *Board of Education v. Rowley* (1982), 458 U.S. 176, 73 L. Ed. 2d 690, 102 S. Ct. 3034, plaintiffs first contend that the trial court and the State Superintendent did not have authority to conduct *de novo* proceedings to reach their own independent conclusions, but rather were obligated to defer to the decision of the local school district where that decision is reasonably based on the facts. Defendants argue, on the other hand, that due deference was given by the trial court to the decision of the State authorities as required by *Rowley*, and that the decision of the trial court was based upon a preponderance of the evidence as required by section 14—8.02(k) (Ill. Rev. Stat. 1981, ch. 122, par. 14—8.02(k)).

In *Rowley*, the court considered the educational needs of a deaf

child, Amy Rowley, who was an excellent lip reader and was receiving her education in a regular classroom. Amy's parents requested that the local school district provide Amy with a sign language interpreter. However, after several weeks of experimentation with an interpreter in the classroom, the school administrators concluded that Amy did not need an interpreter and the parents' request was denied. The parents then demanded and received a hearing before an independent hearing officer who agreed with the administrators' determination that Amy did not need an interpreter because she was "achieving educationally, academically, and socially" without such assistance. (458 U.S. 176, 185, 73 L. Ed. 2d 690, 698, 102 S. Ct. 3034, 3040.) The examiner's decision was affirmed on appeal by the New York Commissioner of Education on the basis of substantial evidence in the record. However, the district court reversed the Commissioner's decision finding that the right to a "free appropriate public education" required that the handicapped child be provided with "an opportunity to achieve [her] full potential commensurate with the opportunity provided to other children." (458 U.S. 176, 185-86, 73 L. Ed. 2d 690, 699, 102 S. Ct. 3034, 3040.) The district court also assumed that the responsibility for giving content to the requirement of an "appropriate education" had "been left entirely to the [federal] courts and the hearing officers." (458 U.S. 176, 186, 73 L. Ed. 2d 690, 699, 102 S. Ct. 3034, 3040.) The United States Court of Appeals for the Second Circuit affirmed the district court's opinion.

The United States Supreme Court considered two questions in its review of the appellate court's decision: (1) what is meant by the EAHCA's requirement of a "free appropriate public education?" and (2) what is the role of State and Federal courts in exercising the review granted under the Act? It is undisputed in the instant case that the provisions of the EAHCA and the Illinois statute are essentially identical and that the Illinois statute incorporates by reference the provisions of the EAHCA which were discussed in *Rowley*. (Ill. Rev. Stat. 1981, ch. 122, par. 14—8.02(f).) With respect to the first issue, the court determined that contrary to the opinions of the district and appellate courts, the EAHCA did not require the States to maximize the potential of handicapped children "commensurate with the opportunity provided to other children," but required only that the child be provided with specialized educational instruction supported by such services as are necessary to permit the child "to benefit" from the instruction. (458 U.S. 176, 186-89, 73 L. Ed. 2d 690, 699-701, 102 S. Ct. 3034, 3040-41.) The court further noted that while the EAHCA also requires participating States to educate handicapped children with

nonhandicapped children whenever possible, *i.e.*, "mainstreaming," that aspect of the Act was not in issue in that case since Amy Rowley was in fact enrolled in a regular classroom of the public school system and was performing above average in that setting. The court emphasized that due to this fact, it was not establishing a test for determining the adequacy of the educational benefits conferred upon children covered by the Act. 458 U.S. 176, 202, 73 L. Ed. 2d 690, 709, 102 S. Ct. 3034, 3049.

*Rowley* is distinguishable from the instant case in several respects. First, the parties here do not dispute the fact that Ingrid is "benefiting" from her "homebound" education. Thus, the question whether Ingrid is receiving a "free appropriate public education" within the meaning of the *Rowley* decision is not in issue here. Second, the *Rowley* case did not discuss the circumstances under which a school district's refusal to "mainstream" a child would constitute a violation of the EAHCA. (See 20 U.S.C. sec. 1412(5) (1982).) Thus, the decision offers little guidance on the proper interpretation of the "mainstreaming" requirement.

Despite its distinguishing features, however, the *Rowley* decision is instructive on the proper interpretation to be given to essentially identical provisions in the Illinois statute regarding the scope of judicial review. The *Rowley* court analyzed certain language in the Federal statute which authorized a reviewing court to base its decision on the "preponderance of the evidence." This language is also contained in the Illinois statute. (Ill. Rev. Stat. 1981, ch. 122, par. 14—8.02(k).) The court determined that this language does not give authority to reviewing courts to "substitute their own notions of sound educational policy for those of the school authorities which they review." (*Board of Education v. Rowley* (1982), 458 U.S. 176, 206, 73 L. Ed. 2d 690, 712, 102 S. Ct. 3034, 3051.) The court further stated that any relief which is granted by a reviewing court must have as its reference point the obligations, largely procedural in nature, which are imposed on recipient States by Congress. Thus, the court concluded that a court's inquiry in suits brought under the EAHCA is limited to determining whether the requirements of that Act have been met, and that questions of methodology are for resolution by the States. In reaching this conclusion, the court cautioned that courts lack the " 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy,' " and stated that "[t]he primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to *state and local educational*

*agencies* in cooperation with the parents or guardian of the child." (Emphasis added.) 458 U.S. 176, 207-08, 73 L. Ed. 2d 690, 712-13, 102 S. Ct. 3034, 3051-52.

In *Roncker v. Walter* (6th Cir. 1983), 700 F.2d 1058, 1062, the court discussed the requirement of "mainstreaming" in light of the *Rowley* decision and determined that a trial court may conduct a *de novo* review of the "mainstreaming" requirement since it is essentially a question of compliance with the Act rather than methodology of education. However, the court stated that due weight should be given to the State administrative proceedings in reaching a decision. 700 F.2d 1058, 1062.

■ Applying these principles to the instant case, we believe the trial court here complied with the standards of judicial review enunciated in *Rowley* and *Roncker*. In affirming the decision of the State Superintendent of Education, the trial court gave due deference to that agency's determination of educational policy under the circumstances presented here. Additionally, while plaintiffs argue that the standard of review enunciated in *Rowley* requires the State Superintendent to give due deference to the decisions of local school districts, we find this argument unpersuasive. First, the role of the State Superintendent in the reviewing process was not in issue in *Rowley* and thus that decision does not support plaintiffs' argument. Second, it is clear that the reasons which justify a limited judicial review by the courts, *i.e.*, a lack of specialized knowledge and experience, do not apply to the State Superintendent of Education, whose expertise is in educational policy and methods. We are therefore of the opinion that the proper standard of review was applied by both the trial court and the State Superintendent.

Plaintiffs next contend that in light of Ingrid's medical condition, homebound placement is the least restrictive and the most beneficial placement for her. Defendants, on the other hand, maintain that in this case the risk of transmission of the disease is remote and is therefore not a sufficient basis on which to exclude Ingrid from classroom participation.

■ The EAHCA requires as a condition for receiving Federal aid that States establish procedures to assure that handicapped children are educated with nonhandicapped children and integrated to the maximum extent appropriate. (20 U.S.C. sec. 1412(5)(b) (1982).) While "mainstreaming" is not required in every case, there is a strong congressional preference in favor of it whenever possible. (*Roncker v. Walter* (6th Cir. 1983), 700 F.2d 1058, 1063.) As stated previously, a trial court may conduct a *de novo* review of a school district's decision

regarding "mainstreaming," as long as due deference is given to the State administrative proceeding in reaching a decision. (700 F.2d 1058, 1062.) Further, both the Illinois statute and the EAHCA require that the court's decision be based on a preponderance of the evidence. (Ill. Rev. Stat. 1981, ch. 122, par. 14—8.02(k); *Board of Education v. Rowley* (1982), 458 U.S. 176, 73 L. Ed. 2d 690, 102 S. Ct. 3034.) Thus, on review the trial court's decision should be affirmed if it has given due deference to the State agencies and if it is not against the manifest weight of the evidence. After reviewing the record here, we conclude that this standard has been met.

At the hearing, it was established that Hepatitis Type B is a disease of the liver which may be transmitted to others through bodily secretions such as blood, saliva, mucus, or semen. Blood is the primary source of the virus, with the other types of secretions being extremely inefficient methods of transmitting the disease. At the State level hearing, three doctors each testified that transmission of the disease is relatively difficult and that the mere presence of a carrier does not result in the disease's transmission. Rather, transmission requires that highly contagious fluid be in extremely close proximity to an open wound on the skin or to a mucous membrane, and even then transmission most often does not occur. Further, it was established by all the experts testifying that any risk could be minimized with proper hygiene, such as hand washing and separating of personal items. It was also established at the hearing that although others at the SEDOM Center could potentially be carriers of Hepatitis Type B, they had never been tested for that disease.

The principal of the SEDOM Center, John Fleshman, testified as to the conditions and programs available at the Center. In his opinion, potential routes for transmission of the disease existed at the Center. Specifically, he stated that the students were ages three to 21, and that the adolescent students, although mentally retarded, have emotional drives, *i.e.*, sex drives, which are exhibited by kissing and, at times, sex. The students move from classroom to classroom for the various academic offerings and interact socially and physically in physical education and in the home living center, an apartment-like setting where students jointly prepare meals and learn independent living skills necessary for functioning in a normal environment. They make common use of certain instructional materials and, at times, may share food and utensils. Fleshman stated that there have been situations where students fall in physical education and scrape or cut themselves when preparing meals in the home living center. He stated that it would be difficult to totally control the children so that these

situations would never arise, and that the students are enrolled at the Center because they have "inappropriate" behaviors that need to be remedied. Mr. Fleshman stated that the student-to-faculty ratio at the Center is approximately five to one. He further stated that while a one-to-one aide would not eliminate the risk of transmission of hepatitis, it would lessen it.

The superintendent and director of special education in McHenry County, James Albert, testified that SEDOM individually tailors programs for its children. Thus, behavioral disordered children are kept in a classroom separate from other handicapped children. Accordingly, there would be no reason to assume that other children in Ingrid's class would attack her so as to increase the risk of exposure through Ingrid's blood or other bodily secretions.

Ingird's foster mother testified that Ingrid is very well aware of her medical condition. As a result, Ingrid on her own initiative is very meticulous about washing her hands regularly and keeping her dishes and utensils separate and reminds others on her own initiative that they cannot use her dishes. She washes her hands after touching her nose or mouth, and wears rubber gloves when helping to wash dishes, all without prompting by others. If she cuts herself, she immediately washes her hands and puts on a bandage, also without prompting. She does not kiss people, and she has never attempted to attack anyone. She is not particularly prone to "mouthing" or drooling. In summary, she is a very well-behaved teenager with a mild disposition.

Both the Illinois Department of Public Health and Ingrid's personal physician were of the opinion that Ingrid could be integrated into the classroom if appropriate sanitary procedures are followed. *Cf. Ely v. Howard County Board of Education* (D.C. Maryland, 1982), 3 EHLR 553: 288, and *In re Santa Clara County Superintendent of Schools* (1982), 3 EHLR 503: 252, where the experts testified that the risk of transmission was significant given the personal characteristics of the handicapped children involved.

In *Hairston v. Drosick* (S.D. W. Va. 1976), 423 F. Supp. 180, 183, it was noted that "[a] major goal of the educational process is the socialization process that takes place in the regular classroom, with the resulting capability to interact in a social way with one's peers." The Superintendent of Education here recognized this most significant aspect of a child's education and determined that under the particular circumstances of this case, the risk of transmission of the disease does not outweigh the injury to Ingrid if she remains isolated from her peers. In light of Ingrid's personal characteristics, the relatively low risk of transmission of the disease as testified to by the experts, and

SEDOM's ability to fashion an individualized program for Ingrid and the other students which could further reduce that risk, we believe due deference was given to the Superintendent's decision and that that decision is supported by a preponderance of the evidence. Plaintiffs' argument that a one-to-one aide would ultimately be detrimental to Ingrid's progress is speculative. If at a later date this fear is in fact realized, Ingrid's placement may be re-evaluated at that time. The trial court's decision in this regard is therefore affirmed.

Plaintiffs next contend that the State Superintendent lacked jurisdiction to review the decision of the local school district because the district's placement of Ingrid derived from her medical condition and not from her handicap. They argue that the fact that Ingrid is handicapped is irrelevant and that there is no basis for special education proceedings in this matter. This argument is without merit.

■ Regardless of whether the school district was acting in the capacity of *in loco parentis*, as it claims on appeal, and regardless of whether its decision was based on a physical disease rather than Ingrid's handicap, it is undisputed that the district's decision did restrict Ingrid's interaction with other children. It is also true that Illinois accepts Federal aid in return for compliance with the EAHCA, which requires "mainstreaming" of handicapped children to the maximum extent appropriate. (See *Roncker v. Walter* (6th Cir. 1983), 700 F.2d 1058, 1062.) It is clear therefore that the school district's decision had the effect of infringing upon Ingrid's right to be "mainstreamed" under the EAHCA and section 14—8.02 of the School Code. (Ill. Rev. Stat. 1981, ch. 122, par. 14—8.02.) Under section 14—8.02(h) of the School Code, the State Superintendent is expressly given the authority to review decisions of the school district which affect a handicapped child's rights under that statute. Ill. Rev. Stat. 1981, ch. 122, par. 14—8.02(h).

Finally, plaintiffs claim they were denied due process by the allegedly improper practices of the State Superintendent. Specifically, plaintiffs allege that they were denied the right to present additional evidence, that the hearing panel had prepared their findings of fact prior to hearing testimony, and that the State Superintendent's decision was premised on information outside the record. These arguments are also without merit.

■ Plaintiffs' claim that they were not allowed to present additional evidence at the State level proceeding is without support in the record. At the hearing, the review panel advised plaintiffs that since the transcript and materials submitted to them already contained considerable information on Ingrid's psychological condition and social be-

haviors, as well as the activities at the SEDOM Center, the panel "would not look with great favor upon much repetition at this point." However, the panel further advised that plaintiffs "may feel free to pursue that course, if you wish." Thus, it is clear that the panel was not prohibiting plaintiffs from presenting evidence at the hearing, but was only advising that it would prefer not to repeat the testimony in evidence which had already been proffered at other stages of the proceeding. Section 14—8.02(h) of the School Code provides that at the State level appeal, the parties "shall be afforded the opportunity to present *** *additional* evidence ***." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 122, par. 14—8.02(h).) Plaintiffs were clearly given this opportunity.

■ We also reject plaintiffs' contention that the panel improperly prepared their findings of fact prior to the hearing. At the beginning of the hearing, the panel stated that "it might advance the matter somewhat if we agreed upon the basis of what we already considered and thus avoid as much repetition as possible." The panel continued by noting that it had received the prior proceedings and had ascertained certain "preliminary findings *** which, of course, subject to radical change, possibly depending upon what we hear today, it is merely our effort to state [what] we have been able to determine so far with regard to health impairment." These comments by the panel indicate its intention to establish the facts already considered by them so that they need not be repeated during that hearing. The findings issued by the panel primarily focused upon the nature and transmission of Hepatitis Type B in general, and did not contain any specific statement on the outcome of the case. Further, the findings of fact issued by the State Superintendent were radically different in that they contained much more detailed and specific findings which reflected the testimony of the doctors at the State level review, and which applied some of the general principles to Ingrid's particular situation. Under these circumstances, it cannot be said that the preliminary findings of fact presented by the panel violated the due process rights of the plaintiffs.

Plaintiffs' claim that the State Superintendent relied upon evidence outside the record to support his determination finds no support in the record. The "additional evidence taken from medical experts by the State's review panel" was merely a reference to the doctors who were called in by the panel to present additional medical testimony at the hearing. These doctors were questioned by the plaintiffs at length, and thus no due process violation occurred on this basis.

For the foregoing reasons the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

SEIDENFELD, P.J., and REINHARD, J., concur.